ISAAC WINKLER & BRO. CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 11932, 13775. Promulgated January 24, 1929.

*Virgil Y. Moore*, Esq., *Andrew T. Smith*, Esq., and *Edgar M. Johnson*, Esq., for the petitioner.

*J. E. Mather*, Esq., and *J. T. Jones*, Esq., for the respondent.

40

OPINION.

LANSDON: All but two of the issues raised in the pleadings have been settled by stipulation. The deficiencies for 1918 and 1920 remain in controversy. As its defense against the additional tax liability asserted against it, for the year 1918, the petitioner contends that for such year it is entitled to have its tax computed under the provisions of section 303 of the Revenue Act of 1918, which is as follows:

That if part of the net income of a corporation is derived (1) from a trade or business (or a branch of a trade or business) in which the employment of capital is necessary, and (2) a part (constituting not less than 30 per centum of its total net income) is derived from a separate trade or business (or a distinctly separate branch of the trade or business) which if constituting the sole trade or business would bring it within the class of "personal service corporations," then (under regulations prescribed by the Commissioner with the approval of the Secretary) the tax upon the first part of such net income shall be separately computed (allowing in such computation only the same proportionate part of the credits authorized in sections 311 and 312), and the tax upon the second part shall be the same percentage thereof as the tax so computed upon the first part is of such first part; *Provided*, That the tax upon such second part shall in no case be less than 20 per centum thereof, unless the tax upon the entire net income, if computed without benefit of this section, would constitute less than 20 per centum of such entire net income, in which event the tax shall be determined upon the entire net income, without reference to this section, as other taxes are determined under this title. The total tax computed under this section shall be subject to the limitations provided in section 302.

A personal service corporation, as referred to in the section above cited, is defined in section 200 of the same Act as follows:

The term "personal service corporation" means a corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor; but does not include any foreign corporation, nor any corporation 50 per centum or more of whose gross income consists either (1) of gains, profits or income derived from trading as a principal, or (2) of gains, profits, commissions or other income, derived from a Government contract or contracts made between April 6, 1917, and November 11, 1918, both dates inclusive.

In the settlement of the controversy we must determine (1) whether there were as many as two distinct branches of the petitioner's business, and (2) whether one such branch which produced not less than 30 per cent of the total net income was so constituted and conducted that, standing alone, it would be entitled to personal service classification. As a trader, the petitioner bought and sold merchandise and realized substantial profits from such transactions. In addition to its general trading it acted as sales agent for the Columbia Chemical Co. The Commissioner has conceded that the income of this branch of the business was from commissions and the evidence shows that such commissions were 2½ per cent of the total sales of the products of the Columbia Chemical Co. made by the petitioner in the year 1918. The petitioner's books show the amounts of income received from the two branches of its business and that more than 30 per cent of the total income is attributable to the brokerage or commission branch. We are convinced that petitioner's business in the year 1918 consisted of two distinct branches, viz., trading in merchandise as a principal and selling the products of the Columbia Chemical Co. as an agent. Cf. *Charles L. Huisking* v. *United States*, 65 Ct. Cls. 260.

Having determined that the petitioner transacted its business through two distinct branches or departments thereof, we must next decide whether, if standing alone, the commission business, which earned net income in the amount of $93,101.69, as set forth in our findings of fact, would be entitled to personal service classification under the provisions of section 200 of the Revenue Act of 1918. The activities of the petitioner, through Winkler, in the sale of the products of the Chemical Company were personal service. To come within the provisions of such section the petitioner must show (1) that its principal stockholders or owners were regularly engaged in the active conduct of the brokerage branch, (2) that capital was not a material income-producing factor therein, and (3) that the income of such branch was primarily ascribable to the activities of the principal stockholders or owners.

The evidence amply sustains the petitioner's contention that capital was not a material income-producing factor in the commission branch of its business. In the correspondence resulting from this controversy the Commissioner concedes that this is true but at the hearings and in his brief suggests that the investment of a substantial amount of the petitioner's capital in the stock of the Columbia Chemical Co. may have contributed in some way to earning the commissions which the petitioner received from the sale of the products of that company. Winkler testified that the petitioner had bought the stock of the chemical company because it was regarded as good investment and that events had confirmed that judgment and also that the sales

agreement was in nowise contingent on any stock ownership in the chemical company by the petitioner.

The holdings in question were less than 1 per cent of the outstanding stock of the chemical company, and the dividends therefrom were regarded as earnings of the trading branch of the business. No representative of the petitioner was at any time a director of that company. We are satisfied that such stock ownership had no bearing on the income of the commission branch of the petitioner's business which, we are convinced, was produced without the use of capital.

The facts as to ownership or holdings of the petitioner's capital stock are fully set forth above. In 1918 Eli Winkler owned 4,996 out of a total of 5,000 outstanding shares of the petitioner's common stock. He also owned, in his own name 1,197 shares of the preferred stock then outstanding in the number of 5,000 shares. In addition to this, as cotrustee with his mother, he held 3,240 shares of such preferred stock which he controlled and voted. Of the remaining preferred stock, 190 shares were owned by S. T. Shoneman, who was secretary of the petitioner and 373 shares by members of the Winkler family who were not active in the business. It appears, therefore, that Eli Winkler was the only stockholder who was regularly engaged in the active conduct of the brokerage branch of the petitioner's business. Except his mother, whose power of attorney he held, no other person owned or held as much as 3 per cent of the stock. In these circumstances we are of the opinion that in 1918 he was a principal owner or stockholder, and was regularly engaged in the active conduct of its business. *Lee Live Stock Commission Co.*, 7 B. T. A. 532; *Fuller & Smith* v. *Routzahn*, 23 Fed. (2d) 959.

That the income of the commission branch of the petitioner's business resulted practically in its entirety from the activities of Winkler is conclusively established by the evidence and is not seriously questioned by the respondent. Selling the products of the Columbia Chemical Co. was Winkler's work. He knew the business, the dealers, and all the conditions of the trade. By correspondence, telegraph and telephone, he personally took most of the orders. In this branch of the business he had no helpers and employed no solicitors.

If the conclusions above are sound, the petitioner should prevail on this issue, unless Bertha Winkler's interest in the preferred stock is a bar to the application of section 303 of the Revenue Act of 1918, to the situation here. Prior to incorporation, Eli Winkler was the sole owner of the business, which was encumbered with certain obligations to his mother and other members of his father's family. It is plain that he intended to carry over intact to the corporation all his rights and interests in the sole proprietorship. With that purpose in view he had the common and preferred stock of the petitioner issued

in such manner that he had full control of the corporation, and, in the taxable year 1918, received or was entitled to receive 87 per cent of the income thereof. By incorporation he neither evaded nor sought to evade any of his obligations as the predecessor sole proprietor, and merely shifted responsibility for the payment thereof from himself as an individual to the corporation, which he completely controlled and whose earnings resulted practically in their entirety from the use of his capital, brains and experience. The petitioner, no less than its predecessor was a one-man business.

If our decision on this point sustains the contention of the petitioner, the relief accorded will result from a change in the method of computing the tax liability of the corporation. Section 303, unlike section 200, does not provide for a distribution of earnings to shareholders prior to the determination of tax liability. The tax here, no matter how computed, will be asserted against and paid by the corporation. None of the income of the brokerage branch of the business results from the activities of nonstockholders. The relief sought by the petitioner can not inure to the benefit of Bertha Winkler, an inactive stockholder, since her income from the corporation is a fixed amount measured by 6 per cent of the par value of her preferred stock, and can not be affected by tax adjustments favorable to Eli Winkler or the petitioner. In these circumstances we are of the opinion that the tax liability of the petitioner for the year 1918 should be computed in conformity with the provisions of section 303 of the Revenue Act of 1918.

The petitioner contends that the two notes, in the amount of $27,-037.58, which it received from Winkler in 1920, were void or voidable when received and, therefor, had no value at December 31 of that year. The evidence on this point is not convincing. At December 31, 1920, one of the notes was due, and the other did not mature for two months thereafter, and it seems clear that at that date there had been no default in payment, denial of liability, or indication of insolvency or inability to pay. Apparently counsel for the petitioner would have us hold that on account of the cited provision in the by-laws of E. F. Drew & Co. the notes were void and uncollectible when made. We can not agree with the conclusion. Winkler was employed by the president of Drew & Co. The directors acquiesced in such employment when they elected him treasurer. One or more or all of them must have known that the salary of Winkler was to be at the rate of $50,000 per annum. One or more or all must have been aware that notes of the company were given in discharge of salary obligation. The

fact that the minutes of the directors of Drew & Co. contain no resolution fixing the salary of Winkler is not conclusive that such action was never taken in such a way as to bind that corporation. There could have been proper action by the directors that was not recorded in the minutes.

The letter from the receivers of Drew & Co. upon which the petitioner, in part, bases its contention that the notes were invalid or void when made was written in 1923. The statements therein in relation to the notes are mere conclusions of law and have no evidentiary weight as proof of absence of value in the notes at December 31, 1920. We are of the opinion that the evidence fails to overcome the presumption that the Commissioner's inclusion of the amount of such notes in the petitioner's income for the year 1920 was correct.

Reviewed by the Board.

> *Decision will be entered under Rule 50, in conformity with the stipulation of the parties and the findings of fact and opinion herein.*

STERNHAGEN and MURDOCK dissent.

---

TRAMMELL, dissenting: I am unable to agree with the Board's decision for the following reasons:

(1) There was 32 per cent of the stock of the corporation owned by persons who were not regularly engaged in the active conduct of the business and in this connection, in my opinion, the statute provides for stock ownership by those who are regularly engaged in the business and not stock control.

(2) It appears that the petitioner was responsible for the payment of goods which it claims to have sold on a commission basis. The goods were billed to it and it was required to pay therefor, thus requiring capital, notwithstanding the fact that it customarily received the purchase price of the goods before it was required to pay the bills. The obligations to pay were the petitioner's obligations. In this connection it seems to me that the credit of the company, which was established by its financial standing based upon its assets, was a material income-producing factor in the petitioner's brokerage business.

(3) It seems to me that this case is governed by the case of *Lane & Co.* v. *United States*, 62 Ct. Cls. 721.

MARQUETTE agrees with this dissent.